UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KYLE KASEY ALLEN,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant. | Case No.: 1:13-cv-1002 BAM<br><br>**ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

### INTRODUCTION

Plaintiff Kyle Allen ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act.[1]  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Magistrate Judge Barbara A. McAuliffe.  The Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards.  Accordingly, this Court affirms the agency's determination to deny benefits.

---

[1]   Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit.

1

# BACKGROUND

On June 17, 2009, Plaintiff applied for supplemental security income, alleging disability beginning March 1, 2002. AR 16. The Commissioner initially denied Plaintiff's claim on November 23, 2009, and upon reconsideration, on May 18, 2010. AR 16. Thereafter, Plaintiff filed a timely request for a hearing. On July 28, 2011, Plaintiff, represented by Melissa Proudian, testified at the hearing. AR 32. On September 19, 2011, ALJ Sharon Madsen denied Plaintiff's application. AR 25. On September 19, 2011, the Appeals Council denied review. AR 1. This appeal followed.

### Hearing Testimony

The ALJ held an administrative hearing on July 28, 2011, in Fresno, California. AR 30. At the hearing, Plaintiff appeared and testified with the help of an attorney, and the ALJ sought testimony from vocational expert Jose Chaparro. AR 31. Plaintiff stated that he graduated from high school and later received vocational training certificates in warehouse and construction. AR 37. Plaintiff reported no problems with performing personal care, completed household chores, cooked, shopped very rarely, got together with neighbors, and helped as the neighborhood watch person. AR 37-38. Plaintiff testified that he held short-term jobs in the past at FedEx Kinkos, Roadhouse Grill, and Clovis United as an equipment manager. AR 41-43.

When asked about his physical impairments, Plaintiff stated that his blood pressure is extremely high, that his diabetes "is extremely fatal," that he experienced severe neck pain constantly, that he had really bad arthritis in his foot. Plaintiff also stated that he had a hard time seeing and reading, and that the strength in his hands gave out after three minutes. AR 44-49. Plaintiff claimed that he can lift and carry only three pounds, sit for ten minutes, stand for five minutes, walk only two blocks, and that he could pick up a pen, but would experience difficulty holding on to the pen. AR 50-51.

Mentally, Plaintiff stated that he had memory problems, got distracted, and paid very little attention when watching television. AR 51-52. Plaintiff expressed regret at being "hot headed," "vulgar," and "racist" at times. AR 52. Plaintiff attends weekly individual counseling sessions. AR 52-53. Upon questioning by his representative attorney, Plaintiff admitted to not complying with the proper diet for his diabetes, stated that he felt anxious six days a week for at least six hours each time.

AR 55-56. Plaintiff said he got very nervous and made mistakes despite explanations and instructions, such as when doing laundry. AR 58-59.

Thereafter, the ALJ elicited testimony of the vocational expert. AR 68. The VE testified that Plaintiff previously worked as a sales attendant. AR 68. The ALJ then asked the expert whether a hypothetical individual with Plaintiff's age, education, work history, and the residual functional capacity to perform medium simple, routine tasks could still work. AR 68. The expert stated that such an individual could still work as a sales attendant, as well as perform other jobs such as bagger, industrial cleaner, and cook helper. AR 69. If Plaintiff was further limited to occasional public contact, the expert testified that he could still work as industrial cleaner and salvage laborer. AR 69. If Plaintiff was further limited to light work, he could work as a housekeeping cleaner, can filling and closing machine tender, and office helper. AR 69-70.

**Relevant Medical Evidence**

The entire medical record was reviewed by the Court and the relevant medical evidence is summarized as follows. AR 262-423. In high school, Plaintiff was placed in an individualized education program from which he exited after successful graduation from Clovis High. AR 264. At graduation, Plaintiff passed his writing competencies and was noted to be in good general health. AR 265. On August 24, 2007, Plaintiff underwent an orthopedic consultative examination with Dr. Abbas Mehdi. AR 286-90. Dr. Mehdi's examination found that Plaintiff had normal ranges of motion in his cervical and lumbar spine, was without tenderness or spasms, and walked without evidence of a limp AR 287. Plaintiff's joints and range of motion were entirely normal throughout his upper and lower extremities, and a neurological examination revealed full 5/5 throughout without evidence of atrophy. AR 289. Dr. Mehdi opined that Plaintiff had "no impairments or exertional limitations." AR 290.

On September 28, 2009, Plaintiff underwent a comprehensive internal medicine consultative examination with Dr. James A. Nowlan. AR 325-28. Plaintiff reported that his symptoms did not prevent him from completing his housework, yard work, and laundry. AR 325. Dr. Nowlan found that Plaintiff's coordination, station, and gait were entirely normal, that his straight leg raising produced no pain, and that his motor strength was 5/5 and was "quite muscular." AR 326-27. The doctor diagnosed "complaints of multiple pains with no objective findings." AR 327. Based on his examination, Dr.

1  Nowlan opined that Plaintiff could stand and walk for six hours, sit for unlimited periods, lift 20
2  pounds occasionally and 40 pounds frequently, and that he had no other functional limitations.  AR
3  328.
4         On October 23, 2009, State agency physician Dr. C. De La Rosa reviewed the medical
5  evidence and commented that with "so little findings [a] light [residual functional capacity] is over
6  restrictive and not consistent with exam findings." AR 329. Dr. De La Rosa instead felt that Plaintiff's
7  impairments appeared "non-severe at this time esp[ecially] when factoring poor control and non-
8  compliance noted with [treating physician]." AR 329.  The doctor further stated that "based on
9  [activities of daily living], and objective medical evidence, a [finding of] non-severe is appropriate at
10 this time." AR 330.
11        On October 28, 2009, Plaintiff underwent a consultative examination assessment with clinical
12 psychologist Dr. Steven C. Swanson.  AR 332-37. Dr. Swanson noted that Plaintiff had a "very limited
13 work history" and had been supported through the years mostly by his mother and then his wife.  AR
14 333. Plaintiff reported being able to independently complete all activities of daily living, including
15 driving, watching television, reading to his daughter, and playing video games.  AR 334. Dr. Swanson
16 noted that Plaintiff's short-term, recent, and remote memories appeared normal, his abstraction ability
17 was adequate, concentration was adequate, and insight and judgment were intact. AR 334-35.  On the
18 Wechsler Adult Intelligence Scale, Plaintiff tested to a Verbal I.Q. of 83, Performance I.Q. of 79, and
19 Full Scale I.Q. of 79.  AR 335.  Dr. Swanson observed that it "was not clear [Plaintiff] had expended a
20 full effort" on this test.  AR 336.  Similarly, on the Test of Memory Malingering, Plaintiff's
21 performance "indicates that he may not have expended an appropriate effort and may be malingering."
22 AR 336. Dr. Swanson opined that Plaintiff was able to maintain concentration, relate appropriately,
23 and could understand, carry out, and remember simple instructions.  AR 337.
24        On November 17, 2009, State agency physician Dr. Preston Davis opined that Plaintiff had no
25 medically determinable mental impairment. AR 339.  Dr. Davis felt that Plaintiff did not have
26 borderline intellectual functioning as his I.Q. score was only 1 point below normal and Dr. Swanson
27 diagnosed "rule out malingering." AR 349.  In addition, Dr. Davis noted that Plaintiff showed
28 adequate cognitive abilities, demonstrated intact activities of daily living, completed chores, and left

his previous job due to low pay with a further history of relying on family members for support. AR 349.

In September and October 2010, psychological trainee Robyn Richardson examined Plaintiff. AR 367-75. Perceptually, Plaintiff scored a Performance I.Q. of 68 and a Full Scale I.Q. of 70. AR 371. Cognitively, Plaintiff scored a Full Scale I.Q. of 70. AR 372. Based on the examination, Ms. Richardson assessed major depressive disorder and generalized anxiety disorder. AR 373. She stated that Plaintiff had difficulties with distractibility, short-term memory tasks, and sequential thinking. AR 373. Ms. Richardson recommended that Plaintiff attend weekly counseling session and be referred for medication evaluation. AR 375.

On May 25, 2011, Medical Assistant Andrea Ormonde completed a transfer summary that was co-signed by supervising clinical psychologist Dr. Gregory N. Cherney. AR 364-66. Ms. Ormonde stated that Plaintiff had borderline intellectual functioning and poor concentration, though his relational capacity, insight, and judgment were all fair. AR 364. Ms. Ormonde felt that Plaintiff's prognosis was fair. AR 365.

On June 9, 2011, Medical Assistant Miracle Goetz and supervising psychologist Gregory Cherney submitted a mental residual functional capacity questionnaire. AR 381-83. They opined that Plaintiff would be unable to competitively maintain attention for two hour segments, work in coordination or proximity with others without being unduly distracted, interact appropriately with the general public, or maintain socially acceptable behavior. AR 381-82. Furthermore, they opined that Plaintiff would miss more than four days per month due to his impairments or treatments. AR 383.

## **THE ALJ'S DECISION**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 16-25. More particularly, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since March 1, 2002. AR 16. The ALJ identified obesity, degenerative joint disease right first metacarpophalangeal joint, borderline intellectual functioning, generalized anxiety disorder, and depression. AR 18. Nonetheless, the ALJ determined that the severity of the Plaintiff's impairments did not meet or exceed any of the listed impairments. AR 19.

1  Based on his review of the entire record, the ALJ determined that Plaintiff retained the residual
2  functional capacity ("RFC") to perform medium work except that he was mentally limited to simple
3  routine tasks with no more than occasional public contact.  AR 20. The ALJ subsequently found that
4  Plaintiff was unable to perform his past relevant work.  AR 23-24.  However, based on Plaintiff age,
5  education, work experience, and RFC, the ALJ determined that significant jobs exist in the national
6  economy that Plaintiff could perform.  AR 23-24.  The ALJ therefore found that Plaintiff was not
7  disabled under the Social Security Act.  AR 24.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commission's conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commission must apply the proper legal standards.  *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commission's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## DISABILITY STANDARD

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or

her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION[2]

**The ALJ Properly Rejected Plaintiff's Treating Physicians Opinion**

Plaintiff's sole argument is that the ALJ failed to give specific and legitimate reasons for rejecting the opinion of his treating clinical psychologist Dr. Gregory Cherney.

    **1.    Dr. Cherney**

Plaintiff began treating with Dr. Cherney and Medical Assistant (MA) Andrea Ormonde at the Psychological Service Center in June 2010 after a self-referral evaluation of depressive symptoms. Ms. Ormonde diagnosed sexual abuse of child (victim), learning disorder (not otherwise specified), bereavement, and parent/child relational problems, features of narcissistic and dependent personality disorder, and rated his global assessment of functioning at 55. AR 378-379. Ms. Ormonde recommended that Plaintiff undergo a psychological evaluation and take weekly individual counseling. AR 379.

After Ms. Ormonde's referral, Plaintiff underwent a battery of psychological evaluations at the Psychological Service Center to assess Plaintiff's level of comprehension and treatment options beginning on September 17, 2010. During his evaluations, Plaintiff repeated his family, educational, occupational, social and sexual, mental, medical, and legal history. AR 367-370. A mental status examination revealed that Plaintiff presented with a significant amount of guilt and shame when expressing his sexuality and sexual gratification but was orientated to person, place, situation and time. AR 370. Plaintiff's speech was pressured and he displayed labored breathing as his anxiety seemed to build throughout the interview and testing. AR 370.

---

[2] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

1    MA Ormonde and Dr. Cherney continued treating Plaintiff from June 2010 through May 2011 and summarized Plaintiff's symptoms and course of treatment as follows:

> Kyle is a 32 year old Caucasisan male who was self referred, His main concern is the death of his step-father who died about a year ago and his resulting emotions. Client also endorsed depressive symptoms stating, "I wonder why I was ever born, I hate myself, I can't even look in the mirror" as well as reporting having racing thoughts and rapid heartbeat. Kyle seemed to have concerns regarding his sexuality and regarding his sexual orientation.

AR 364.

> Dr. Cherney reported that Plaintiff is a 32 year old male who presented as fully to all spheres but his thought process fluctuated between logical, tangential, and disorganized. His intellectual functioning may be below average (special education throughout high school) and he evidenced poor concentration. His relational capacity, judgment, and insight are all fair. AR 378.

> Plaintiff reports suicidal ideation and stated that his first attempt at suicide was when he was fourteen in which he cut himself three times. During his screening Kyle reported having extreme distress but no intention of harming himself despite his fairly detailed plan of driving himself off a bridge. Emergency numbers and suicide hotline numbers were given to him during his screening. During his intake sessions his ideation and suicidal intentions were explored. Each time client brought up thoughts of suicide, often expressing, "I wish I could disappear or just go away" or "I really wish I was in heaven because then I could be with my grandparents" he would deny having any intention of following through stating, "I would not do that to my wife, daughter, and mother."

> Client presents as having confusion and anxiety regarding his past sexual activity with John and his current marriage. These two topics also arouse angst and the client tends to perseverate on them.

> …

> The clinical picture is of an individual whose concentration results in limited capacity to fully understand the powerful shame and sadness that he has experienced secondary to early affectional loss. Kyle's adolescence and adult history includes acting out unresolved dependency needs and feelings resulting in increased vulnerability to manipulation by others with resultant exacerbation to shame and self-loathing. Client needs to identify, grieve, tolerate, and learn to adaptively manage his residual threatening affect without continuing to unconsciously reenact his desire to recoup the affection ultimately lost.

AR 378.

On May 25, 2011, MA Andrea Ormonde completed a transfer summary, co-signed by supervising clinical psychologist Dr. Cherney. AR 364-66. MA Ormonde stated that Plaintiff had borderline intellectual functioning and poor concentration, though his relational capacity, insight, and judgment were all fair. AR 364. MA Ormonde also felt that Plaintiff's prognosis was fair. AR 365.

On June 9, 2011, Plaintiff's case was subsequently transferred and MA Miracle Goetz and supervising psychologist Dr. Cherney completed a mental residual functional capacity questionnaire. AR 381-83. The report, primarily authored by MA Goetz and co-signed by Dr. Cherney, opined that Plaintiff would be unable to competitively maintain attention for two hour segments, work in coordination or proximity with others without being unduly distracted, interact appropriately with the general public, or maintain socially acceptable behavior. AR 381-82. Furthermore, the report stated that Plaintiff would miss more than four days per month due to his impairments or treatments. AR 383.

With respect to Dr. Cherney's opinion, ALJ Madsen found as follows:

> In the mental residual functional capacity questionnaire, MA Miracle Goetz and Dr. G. Cherney(co-signer) reported that the claimant would be unable to maintain attention for two-hour segments, work in coordination with or proximity to others without being unduly distracted, understand and remember detailed instructions and carry out detailed instructions, interact appropriately with the general public, or maintain socially appropriate behavior. The claimant would be seriously limited but not precluded in sustaining an ordinary routine without special supervision, accepting instructions and responding appropriately to criticism from supervisors, responding appropriately to changes in a routing [sic] work setting, dealing with stress of semi-skilled and skilled work, traveling in unfamiliar place, and would be absent more than four days per month. These limitations are overly restrictive and are not corroborated by any other medical evidence and are given little weight. I further note that Ms. Goetz as the primary author of the report is not an acceptable source under Social Security regulations.

AR 23.

### 2. Legal Standards

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may

1  not reject this opinion without providing "specific and legitimate reasons" supported by substantial
2  evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

3        In the hierarchy of physician opinions considered in assessing a social security claim,
4  "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an
5  examining physician's opinion carries more weight than a reviewing physician's." *Holohan v.*
6  *Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007). *See*
7  *also*, 20 C.F.R. § 404.1527(c)(1)-(2). If a treating physician's opinion is "well-supported by medically
8  acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other
9  substantial evidence in [the] case record, [it will be given] controlling weight." 20 C.F.R. §
10 404.1527(c)(2).

11       If a treating physician's opinion is not given "controlling weight" because it is not "well-
12 supported" or because it is inconsistent with other substantial evidence in the record, the
13 Administration considers specified factors in determining the weight it will be given. Those factors
14 include the "[l]ength of the treatment relationship and the frequency of examination" by the treating
15 physician; and the "nature and extent of the treatment relationship" between the patient and the
16 treating physician. *Id*. § 404.1527(c)(2)(i)-(ii). Additional factors relevant to evaluating any medical
17 opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence
18 that supports the opinion and the quality of the explanation provided; the consistency of the medical
19 opinion with the record as a whole; the specialty of the physician providing the opinion; and "[o]ther
20 factors" such as the degree of understanding a physician has of the Administration's "disability
21 programs and their evidentiary requirements" and the degree of his or her familiarity with other
22 information in the case record. *Id*. § 404.1527(c)(3)-(6).

23     **3.**    **Analysis**

24       Plaintiff argues that the ALJ's reason for rejecting the opinion of Dr. Cherney is legally
25 insufficient. (Doc. 16 at 12). According to Plaintiff, an ALJ may not simply reject a physician's
26 opinion solely because it is inconsistent with the clinical findings.

27

28

Contrary to Plaintiff's contention that the ALJ relied solely on the inconsistency with the medical findings to discount the Goetz/Cherney report, the ALJ stated several reasons for giving limited weight to the opinions of Dr. Cherney and MA Goetz including that Dr. Cherney's opinions: (1) were overly restrictive; (2) the primary author of Dr. Cherney's opinion is MA Goetz, who is not an acceptable source; and (3) that Plaintiff was seeing physicians primarily in order to generate evidence for his social security application and appeal. AR 22-23.

First, the ALJ correctly found that Dr. Cherney's medical limitations were overly restrictive. The ALJ noted that the Goetz/Cherney opinion was an outlier in its restrictiveness and contradicted by both the State agency and the consultative examination opinions. AR 23. Indeed, consultative clinical psychologist Dr. Swanson noted several factors suggesting that Plaintiff was functionally far more capable than the opinion of Goetz/Cherney. AR 332-37. In his medical opinion, Dr. Swanson questioned the credibility of Plaintiff's complaints and noted that the legitamacy of Plaintiff's impairments was adversely impacted by Plaintiff's "very limited work history," his years of relying on his mother and then his wife for income, and his self-reported ability to independently complete all activities of daily living, including driving, watching television, reading to his daughter, and playing video games. AR 334. *See e.g. Thomas v. Barnhart*, 278 F.3d 948, 959 (9th Cir. 2002) (Plaintiff had "an 'extremely poor work history' and 'has shown little propensity to work in her lifetime,' which negatively affected her credibility regarding her inability to work"); *Mayes v. Massanari*, 276 F.3d 453, 457, 461 (9th Cir. 2001) (Plaintiff's activities such as watching television, straightening her house, shopping and washing laundry (with help), painting by numbers, working puzzles, listening to music, trying to exercise and sometimes going to eat with her boyfriend, "suggested that she could also work").

Furthermore, State agency reviewing physician Dr. Davis found that the overall mental medical and non-medical evidence was so lacking that he opined that Plaintiff had no medically determinable mental impairment. AR 339. Dr. Davis noted upon examination Plaintiff's I.Q. score was still only 1 point below normal, even considering Dr. Swanson's belief that Plaintiff did not expend a full effort. AR 349. Dr. Davis also opined that Plaintiff showed adequate cognitive abilities, demonstrated intact activities of daily living, completed chores, and left his previous job not because

he could not work but due to low pay.  Dr. Davis further indicated that Plaintiff's comprehension and communication problems were more likely related to his malingering.  AR 347.

The ALJ weighed Dr. Cherney's findings against the findings of both the consultative examiner and the state agency reviewing physician and looking at the record as a whole, the Court cannot find error in the ALJ's overarching finding that the Goetz/Dr. Cherney opinion was overly restrictive and therefore not entitled to great weight. The medical evidence from Dr. Swanson indicates that Plaintiff's short-term, recent, and remote memories appeared normal, his abstraction ability was adequate, concentration was adequate, and insight and judgment were intact. AR 334-35. More significantly, it was "not clear [Plaintiff] had expended a full effort" on the Wechsler Adult Intelligence Scale test, an indication further corroborated when Plaintiff's performance on the Test of Memory Malingering, also indicated that "he may not have expended an appropriate effort and may be malingering." AR 335, 336. Based on his examination, Dr. Swanson opined that Plaintiff was able to maintain concentration, relate appropriately, and could understand, carry out, and remember simple instructions.  AR 337. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (explaining that a consultative examiner's "opinion alone constitutes substantial evidence, because it rests on his own independent examination of [Plaintiff]").

Aside from the Goetz/Dr. Cherney opinion in June 2011, the record consistently suggested that Plaintiff was capable of work despite his mental impairments.  There was a direct conflict between Dr. Cherney's opinion and the weight of the other medical evidence, and the ALJ legitimately decided that Dr. Cherney's limitations were an outlier and credited it "little weight." AR 23. The ALJ properly resolved the conflict between Dr. Cherney's opinion and the opinions of every other medical source in the record that Plaintiff had mild or no limitations. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (holding that it is the responsibility of the ALJ to resolve conflicts and ambiguities in the medical record and determine the credibility of medical sources).

Second, the ALJ also noted that MA Goetz serves as medical assistant for Dr. Cherney.  MA Goetz, as the primary author of Dr. Cherney's report, is not an acceptable source under the Social Security Regulations. AR 23. Cases that have examined the issue of whether to consider evidence from "other sources" have determined that although physician assistants are not "acceptable medical

sources," their opinions should be evaluated on "key issues such as impairment severity and functional effects . . . ."[3] *Sloan v. Astrue*, 499 F.3d at 888-89; *accord Bowman v. Astrue*, 511 F.3d 1270, 1274-75 (10th Cir. 2008); *Tourney v. Astrue*, 2008 U.S. Dist. Lexis, 51649, at *4-5 (C.D. Cal. July 3, 2008). Still, "[i]nformation from these "other sources" cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an "acceptable medical source" for this purpose." Soc. Sec. Ruling 06-03p, 2006 SSR LEXIS 5, *5, 2006 WL 2329939, at *2 (Aug. 9. 2006).

As discussed above, the ALJ determined that the Goetz/Dr. Cherney opinion conflicted with the medical evidence in the record, including the opinions from other "acceptable medical sources" that concluded Plaintiff was capable of working with fewer restrictions. Although a more complete discussion of her reasons for rejecting the medical assistant's opinion as an "other source" would have been helpful,[4] overall the ALJ gave specific and legitimate reasons for rejecting the Goetz/Dr. Cherney opinion. It was the ALJ's duty to resolve the conflict among the medical opinions, and because the ALJ gave specific and legitimate reasons for discounting MA Goetz/Dr. Cherney's extreme finding, any error was harmless. *See Harlow v. Soc. Sec. Admin., Comm'r*, 2014 U.S. App. LEXIS 10411, 2014 WL 2505173, at *1 (9th Cir. June 4, 2014) (reliance on erroneous basis for discounting medical opinion harmless when ALJ provided independent specific and legitimate reason for doing so). In reaching her conclusion, the ALJ considered and properly interpreted the relevant medical source evidence and provided specific and legitimate reasons for the weight given to the acceptable medical sources, and supported those reasons with substantial evidence in the record.

Finally, the ALJ noted that the nature of Plaintiff's medical visits suggested that the visits were primarily attempts to generate evidence for his disability application and appeal as opposed to trying to get relief from allegedly disabling symptoms. Plaintiff's initial SSI application was denied upon

---

[3] A physician assistant is in the "other sources" group but is a "medical source" in that group. *Id.* (citing 20 C.F.R. §§ 404.1513(d), 416.913(d) (2007)).

[4] An ALJ must be mindful of the limitations placed upon a reviewing Court. Reviewing courts cannot accept post hoc rationalizations for agency action and must limit their review to the grounds articulated in the agency's opinion. *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1225–26 (9th Cir.2009). An ALJ must fully discuss her reasons for her decisions as, in part, an aid to the reviewing court.

reconsideration on May 18, 2010.  Plaintiff began treatment with Dr. Cherney shortly thereafter in June 2010. Based on the timing, the ALJ could reasonably infer that Plaintiff saw Dr. Cherney "to generate evidence of disability" rather than provide treatment. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (ALJ may draw reasonable inferences logically flowing from the record).

The ALJ properly considered that Dr. Cherney's opinions were inconsistent with the relatively normal clinical findings in the record. The ALJ then articulated specific and legitimate reasons for rejecting Dr. Cherney's opinion.  The ALJ was entitled to resolve the conflict between Dr. Cherney's opinion and those of the other doctors in favor of the conclusion supported by the consistent objective evidence. Accordingly, the Court will not reverse or remand the ALJ's decision for failure to credit Dr. Cherney's medical opinion.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin, Commissioner of Social Security, and against Plaintiff Kyle Allen.

IT IS SO ORDERED.

Dated:   **September 25, 2014**            /s/ *Barbara A. McAuliffe*
                                           UNITED STATES MAGISTRATE JUDGE